IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

Michael J. Sollenberger,       )
                             )
      Plaintiff,        )         Case No.: 3:15-CV-00213
                             )
  vs.                   )
                             )
                             )
Jennifer A. Sollenberger, *et al.*,   )         Judge Thomas M. Rose
                             )         Magistrate Judge Sharon L.
      Defendants.      )         Ovington

**DECISION AND ENTRY GRANTING DEFENDANT PLUMMER AND SHERIFF DEFENDANTS' MOTION TO DISMISS (DOC. 13), GRANTING DEFENDANT SOLLENBERGER'S MOTION TO DISMISS (DOC. 2-1, at PageID# 126–27), GRANTING DEFENDANT ESTRIDGE'S MOTIONS TO DISMISS (DOC. 17), AND TERMINATING CASE.**

Plaintiff Michael J. Sollenberger ("Plaintiff Sollenberger") filed suit against Jennifer A. Sollenberger ("Defendant Sollenberger") and Dannelle Estridge ("Defendant Estridge")[1], as well as Sheriff Phil Plummer ("Defendant Plummer"), Sergeant David Parin ("Defendant Parin"), Detective Bryan Cavender ("Defendant Cavender"), and Detective Tony Hutson ("Defendant Hutson"), alleging deprivation of his constitutional rights under 42 U.S.C. § 1983 and various Ohio common law tort claims. The Court has original jurisdiction over Plaintiff Sollenberger's federal claims pursuant to 28 U.S.C. § 1343(a)(3), and supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(a).

Pending before the Court is Defendant Plummer and Sheriff Defendants'[2] Motion to Dismiss (Doc. 13), brought pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Estridge's Motion to Dismiss (Doc. 17), brought pursuant to Fed. R. Civ. P. 8, 12(c), and Defendant Sollenberger's

---

[1] Dannelle is listed in Plaintiff's Complaint as "Danielle" and "Dannielle" Estridge.
[2] Defendants Parin, Cavender, and Hutson are referred to, collectively, as "Sheriff Defendants."

1

Motion to Dismiss (Doc. 2-1, at PageID# 126–27.). These Motions are now fully briefed and ripe for decision. A relevant factual background will first be set forth, followed by the applicable legal standard and analysis of the motions to dismiss.

## I.    FACTUAL AND PROCEDURAL HISTORY

In the context of a motion to dismiss, the Court must accept as true all of the factual allegations contained in the complaint. In the context of a motion for judgment on the pleadings, the Court may also consider court decisions and other public records. Plaintiff's Complaint includes the following factual allegations:

Plaintiff Sollenberger is a resident of Montgomery County, Ohio, and was formerly employed by the Montgomery County Sheriff's Office in Dayton, Ohio. (Doc. 2-1, at PageID# 88–89.) Plaintiff Sollenberger and Defendant Sollenberger are currently married, but in the process of finalizing divorce proceedings in the Court of Common Pleas of Montgomery County, Ohio. (*Id.*, at PageID# 89.) Plaintiff Sollenberger and Defendant Sollenberger were physically separated during the divorce proceedings. (*Id.*)

On or about April or May 2014, Defendant Sollenberger noticed their son—who was staying at her residence for the week—looking through her bedroom dresser drawers.[3] (Doc. 11-2, at 18.) Sollenbergers' son was looking for one of Defendant Sollenberger's old cell phones, which was in Defendant Sollenberger's possession, so that the son could use it. (*Id.*; Doc. 2-1, at PageID# 89.) At this point, Defendant Sollenberger had been in possession of at least two old cell phones "for an extended and continuous period of time[,]" as they had been left at her residence since Plaintiff Sollenberger moved out.[4] (Doc. 2-1, at PageID# 90; Doc. 8, at 9, 31.)

---

[3] The Court may consider the information contained in Defendant Sollenberger's interview, as it was referred to in paragraph 21 of the Plaintiff's Complaint, central to his claims, and a matter of public record. *See infra* Part II.

[4] The Court may consider the information contained in Defendant Estridge's Answer in ruling on a Motion for Judgment on the Pleadings. *See infra* Part II.

The cell phone in question was one of Plaintiff Sollenberger's old cell phones, it was located in Defendant Sollenberger's bedroom dresser drawers, and it was not password protected. (Doc. 11-2, at 18; Doc. 8, at 9.)

Following a discussion with friends, Defendant Sollenberger suspected Plaintiff Sollenberger's old cell phone might contain certain information regarding Plaintiff Sollenberger. (Doc. 2-1, at PageID# 89.) In May 2014, Defendant Sollenberger gave possession of Plaintiff Sollenberger's old cell phone to Defendant Estridge, who accessed and extracted digital information from the cell phone. (*Id.*) The extracted information, included, but was not limited to, text messages between Plaintiff Sollenberger and his co-workers, pictures, and other deleted, digital information. (*Id.*) Defendant Estridge used a computer program to access and extract this information; storing the information on the hard drive of her personal computer. (*Id.*) Defendants Sollenberger and Estridge reviewed the information. (*Id.*)

In August 2014, Defendant Sollenberger sent some, but not all, of the information stored by Defendant Estridge to the National Association for the Advancement of Colored People ("NAACP"). (*Id.*) In December 2014, a representative from the NAACP provided the Montgomery County Sheriff's Office with 105-copied pages of text messages. (*Id.*) Upon review of these text messages, the Sheriff's Office initiated an administrative investigation into Plaintiff Sollenberger and other Sheriff's Office employees. (*Id.*) The pages contained statements by the Plaintiff that were derogatory and expressed a desire to harm minority members of the community.[5] (Doc. 13-2, at PageID# 358–406; Doc. 13-3, at PageID# 407–63.) These statements include, but are not limited to, the following:

    1. "I'll stab a coon." (Doc. 13-2, at PageID# 457.)

---

[5] The quoted content of the text messages is not contained within Michael's Complaint; nevertheless, the Court may consider the text messages, as they were referred to in paragraphs 19–20 of the Complaint and are central to his claim. *See infra* Part II.

2. "BTW the niggers are trying to take over Boston's." (*Id.*)

3. "I hate niggers. That is all." (Doc. 13-3, at PageID# 458.)

4. "Just because a nigger scammed the election and is pres. It does not give the G-damn right to shop at DLM." (*Id.*, at PageID# 453.)

5. "Thank you for stepping up and wanting to kill Muslim sand niggers when no one else would." (Doc. 13-2, at PageID# 367.)

6. "He's a half[-]breed. It's not his fault is [sic] mom was a mud shark communist whore." (*Id.*, at PageID# 375.)

7. "[H]ope he was screaming as he died and his negro friends were freaking out." (*Id.*, at PageID# 387.)

8. "Watching history channel on MLK. Showing old films of restaurants in the south. It would have been fun to beat up coloreds cause [sic] they came into your restaurant." (*Id.*, at PageID# 391.)

9. "I dislike coloreds." (*Id.*, at PageID# 396.)

10. "Did you see the niggers that made the news in Texas because they refused to pay the gratuity on a party of ten [?]"(Doc. 13-3, at PageID# 412.)

11. "U [sic] ever see that nigger reporting for Fox 45? The only thing he's missing is a blunt and a dew rag." (*Id.*, at PageID# 432.)

On December 16, 2014, Defendant Sollenberger met with an employee of the Sheriff's Office to discuss how she came into possession of the information extracted from Plaintiff Sollenberger's old cell phone. (Doc. 2-1, at PageID# 89.) At this point, Defendant Sollenberger provided one of Plaintiff Sollenberger's cell phones to the employee, and Defendant Hutson used the Sheriff's Office software for forensic imaging, and then, returned the cell phone to Defendant

4

Sollenberger. (*Id.*, at PageID# 90.) The information provided to the Sheriff's Office by the NAACP was not contained on this cell phone. (*Id.*)

On January 13, 2015, Defendant Estridge met with a Sheriff's Office employee to copy files from her personal computer onto a Sheriff's Office hard drive, but this task was unsuccessful. (*Id.*) Three days later, Defendant Estridge returned to the Sheriff's Office and transferred files from her personal computer to a flash drive as well as to a cell phone provided by the Sheriff's Office. (*Id.*) On January 20, 2015, Defendants Sollenberger and Estridge returned for a final time, providing Plaintiff Sollenberger's old cell phone that originally contained the digital information in question. (*Id.*) Defendant Hutson imaged the phone using the Sheriff's Office software, and employees conducted an examination of the information obtained therein. (*Id.*) The extracted digital information was determined to be "similar to or the same as the digital information [Defendants Sollenberger and Estridge] were able to extract," and the Sheriff's Office used the obtained information for the purposes of their investigation. (*Id.*)

The Sheriff's Office determined that Plaintiff Sollenberger violated the Sheriff's Office Professional Conduct Rules. (*Id.*) On December 1, 2014, Plaintiff Sollenberger was placed on administrative leave, and ultimately, terminated on February 6, 2015. (*Id.*)

Plaintiff Sollenberger filed suit on May 15, 2015, in the Court of Common Pleas of Montgomery County, Ohio, in which he alleged state law claims and violations of his federal constitutional rights and sought recovery under 42 U.S.C. § 1983. (Doc. 2-1, at PageID# 87–95.) Pursuant to 28 U.S.C. § 1441, Defendants removed the case to this Court. (Doc. 2, at PageID# 76–78; Doc. 2-1, at PageID# 79–156; Doc. 2-2, at PageID# 157.)

Plaintiff Sollenberger's Complaint presents six claims. (Doc. 2-1, at PageID# 87–95.) The first three and sixth causes of action allege claims under Ohio law, namely: invasion of

privacy against all Defendants (First Claim); asserted civil claim for uncharged criminal act pursuant to O.R.C. § 2307.60 against all Defendants (Second Claim); tortious interference with an employment relationship against Defendants Sollenberger and Estridge (Third Claim); and civil conspiracy against all Defendants (Sixth Claim). (*Id.*, at PageID# 90–92, 94) Plaintiff Sollenberger's remaining claims arise under 42 U.S.C. § 1983: a claim for unlawful search and seizure against Sheriff Defendants (Fourth Claim); and a claim against Defendant Plummer, in his official capacity, for failure to train Sheriff Defendants (Fifth Claim). (*Id.*, at PageID# 92–94.)

Defendant Plummer and Sheriff Defendants filed a Motion to Dismiss[6] on July 24, 2015, arguing that Plaintiff Sollenberger failed to establish his state and federal claims asserted against them, as well as that they are entitled to the protections of qualified immunity on Plaintiff Sollenberger's federal law claims and statutory immunity on his state law claims. (Doc. 13, at PageID# 319–53.) Plaintiff Sollenberger filed a Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. 19) on August 14, 2015, and Defendant Plummer and Sheriff Defendants filed a Reply Memorandum in Support of their Motion to Dismiss (Doc. 21) on August 31, 2015.

Defendant Estridge filed a Motion to Dismiss[7] on July 31, 2015, arguing that Plaintiff Sollenberger failed to state claims that are plausible on their face. (Doc. 17.) Plaintiff Sollenberger filed a Memorandum in Opposition to Defendant's Motion to Dismiss (Doc. 20) on August 21, 2015, and Defendant Estridge filed a Reply Memorandum in Support of her Motion to Dismiss (Doc. 22) on September 04, 2015.

---

[6] Defendant Plummer and Sheriff Defendants' Motion to Dismiss addresses claims one, two, four, five, and six.
[7] Defendant Estridge's Motion to Dismiss addresses claims one, two, three, and six.

Defendant Sollenberger filed a Motion to Dismiss on June 05, 2015 in the Court of Common Pleas of Montgomery County, Ohio. (Doc. 2-1, at PageID# 126–27.)

## II.      STANDARD OF REVIEW – MOTION TO DISMISS

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001)).

The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987)). Put another way, "the purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2004). Further, for purposes of a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

To survive a 12(b)(6) motion to dismiss, a plaintiff must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action is not enough. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp.*, 550 U.S. at 563. However, the factual allegations must be enough to raise a right to relief above the speculative level. *Id.* at

555 (citing 5B C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216 (3d ed. 2004)). The factual allegations in the complaint, even if doubtful in fact, must do something more than merely create a suspicion of a legally cognizable right. *Id*. at § 1216.

However, the Supreme Court has held that:

[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Twombly*, 550 U.S. at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation"). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157–58. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

The Sixth Circuit has also noted that to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citation omitted), *cert. denied*, 516 U.S. 1158. The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Put another way, bare assertions of legal conclusions are not sufficient. *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). It is only well-pleaded facts, which are construed liberally in favor of the party opposing the motion to dismiss. *Id*.

In evaluating whether the plaintiff has stated a cognizable claim, the court generally may not consider matters outside of the pleadings. *See Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). To this effect, Rule 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. All parties must be given a reasonable opportunity to present all material that is pertinent to the motion."

The Sixth Circuit has clarified the scope of what the court may consider without reaching "matters outside of the pleadings." Generally speaking, while a plaintiff is not required to attach to the complaint documents upon which his action is based, Fed. R. Civ. P. 10(c) considers "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." *See Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997); *see also* Fed R. Civ. P. 10(c). The Court may consider the complaint, in addition to: (1) documents referenced in the complaint or central to plaintiff's claim; (2) matters where the Court may take judicial notice; (3) documents that are public record; and (4) decisions of a government agency. *Dye v. Wells Fargo Home Mortg.*, No. 13-CV-14854, 2014 U.S. Dist. LEXIS 65419, at *10 (E.D. Mich. May 13, 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *see also Weiner*, 108 F.3d at 89 (finding documents attached to a motion to dismiss by a defendant as part of the pleadings if referred to in the complaint and central to its claims).

This acts as a protection for the defendant, without which "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Weiner*, 108 F.3d at 89 (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Under these circumstances, the Court may consider the extraneous document without requiring the conversion of the motion to one for

summary judgment. *See, e.g.*, *Weiner*, 108 F.3d at 89 (considering additional documents along with the complaint).

Notwithstanding, the ability of a court to consider supplementary documents is not without limitations. The Sixth Circuit has explained that "[w]hile documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (citations, internal quotation marks, and alterations omitted). Put otherwise, if the authenticity, validity, or enforceability of a document is not in dispute, the court may consider it on a motion to dismiss; however, a genuine dispute as to the legal sufficiency of said document requires the court to consider the issue under a motion for summary judgment standard. *Id.*; *see also Ouwinga v. Benistar 419 Plan Servs.*, 694 F.3d 783, 796–97 (6th Cir. 2012). Additionally, "[i]n ruling on a Rule 12(c) motion, the court considers all available pleadings, including the complaint and the answer." *Dudek v. Thomas & Thomas Attys. & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio Mar. 22, 2010) (citing Fed. R. Civ. P. 12(c)).

## III.    ANALYSIS

### A.  Plaintiff Sollenberger's federal claims under 42 U.S.C. § 1983

Defendant Plummer and Sheriff Defendants argue that Plaintiff Sollenberger's federal law claims fail as a matter of law and because they are entitled to the protections of the doctrine of qualified immunity. (Doc. 13, at PageID# 336–42, 346–52.) Although dismissals on the basis of qualified immunity are generally made pursuant to summary judgment motions, *Grose v. Caruso*, 284 F. App'x. 279, 283 (6th Cir. 2008), "this circuit permits a . . . court to dismiss under Fed. R. Civ. P. 12(b)(6) based on qualified immunity." *Jackson v. Schultz*, 429 F.3d 586, 589

(6th Cir. 2005) (citing *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987)). Therefore, there are two questions presented. First, Defendant Plummer and Sheriff Defendants still bear the burden of establishing that Plaintiff Sollenberger has failed to allege facts that state a viable claim under color of state law. 42 U.S.C. § 1983. Second, Defendant Plummer and Sheriff Defendants' qualified immunity challenge imposes an additional burden on Plaintiff Sollenberger in stating a claim under Section 1983. *See Shoup v. Doyle*, 974 F. Supp. 2d 1058, 1072 (S.D. Ohio 2013).

Under the doctrine of qualified immunity, government officials performing discretionary functions are afforded immunity under 42 U.S.C. § 1983, as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Christophel v. Kukulinksy*, 61 F.3d 479, 484 (6th Cir. 1995); *Adam v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994); *Flatford v. City of Monroe*, 17 F.3d 162, 166 (6th Cir. 1994). Even though the reasonableness determination of an official's action is based on objective factors, "the Supreme Court requires a fact-specific inquiry to determine whether officials would reasonably, even if mistakenly, believe their actions are lawful." *Flatford*, 17 F.3d at 166 (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

Qualified immunity analysis involves three inquiries: (i) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)). Qualified immunity must be granted if Plaintiff Sollenberger cannot

establish all three elements. *See Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004). Therefore, in order for Plaintiff Sollenberger's federal law claims to survive Defendant Plummer and Sheriff Defendants' qualified immunity challenge, Plaintiff Sollenberger must demonstrate that the constitutional rights were clearly established at the time of alleged violation. *See Harlow*, 457 U.S. at 818.

"Since qualified immunity is a defense, the burden of pleading it rests with the defendant." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citing Fed. R. Civ. P. 8(c); 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1271 (1969)). Once pleaded, the burden shifts to the plaintiff to show that the defendants are not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

## 1. Unlawful Search against Sheriff Defendants (Fourth Claim)

Plaintiff Sollenberger claims that because Sheriff Defendants conducted a forensic examination of his old cell phone "[w]ithout any warrant, court order, subpoena, or [Plaintiff Sollenberger's] consent," their actions constituted an unreasonable search, in violation of the Fourth and Fourteenth Amendments,[8] as well as Article I, Section 14 of the Ohio Constitution.[9] (Doc. 2-1, at PageID# 90, 93.) Sheriff Defendants argue that their search was reasonable, as well as provide two alternative arguments: that the search was permissible because it was conducted with the consent of Plaintiff Sollenberger's wife, and that the information at issue was provided to the Sheriff Defendants by third parties. (Doc. 13, at PageID# 335–42.)

---

[8] The Fourth Amendment's prohibition against unreasonable searches and seizures is enforceable against the States through the Fourteenth Amendment. *Ker v. California*, 374 U.S. 23, 30 (1963); *Mapp v. Ohio*, 367 U.S. 643, 660 (1961).

[9] The Court must only analyze this claim under the Fourth and Fourteenth Amendments because the Ohio Constitution does not afford plaintiff any greater protections. *Logsdon v. Hains*, 429 F.3d 334, 347 (6th Cir. 2007) (citing *State v. Andrews*, 565 N.E.2d 1271, 1273 n.1 (Ohio 1991)); *State v. Brown*, 39 N.E.3d 496, 504 (Ohio 2015) (holding the Ohio Constitution provides no greater protection than the Fourth Amendment).

Claims for an unlawful search arise under the Fourth Amendment, which provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." *United States v. Mendenhall*, 446 U.S. 544, 550 (1980). "A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (internal quotations omitted). "'The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government,' without regard to whether the government actor is investigating crime or performing another function." *City of Ontario v. Quon*, 560 U.S. 746, 755–56 (2010) (quoting *Skinner v. Railway Labor Execs.' Ass'n.*, 489 U.S. 602, 613–14 (1989)). However, the Supreme Court in *Quon* declined to establish whether an employee subject to an investigation for misconduct has a reasonable expectation of privacy. 560 U.S. at 759–60.

Assuming *arguendo*—Plaintiff Sollenberger has sufficiently plead facts to support a reasonable expectation of privacy in his old cell phone, application of the Fourth Amendment does not stop when the Government acts in its capacity as an employer. *Treasury Emps. v. Von Raab*, 489 U.S. 656, 665 (1989). The Supreme Court in *O'Connor* analyzed this issue, as it relates to a search of a physician's office at a state hospital, unanimously agreeing, "[i]ndividuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer." *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987) (plurality opinion); *see also id.*, at 731 (Scalia, J., concurring in judgment); *id.*, at 737 (Blackmun, J., dissenting).

This application is only the beginning of the inquiry because what is considered reasonable depends on the context of the search. *New Jersey v. T. L. O.*, 469 U.S. 325, 337 (1985). "Because the reasonableness of an expectation of privacy, as well as the appropriate

13

standard for a search, is understood to differ according to context, it is essential first to delineate the boundaries of the workplace." *O'Connor*, 480 U.S. at 715 (stating "[t]he workplace includes those areas and items that are related to work and are generally within the employer's control.") (plurality opinion). The reasonableness determination requires "[balancing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983); *Camara v. Municipal Court*, 387 U.S. 523, 536–37 (1967). For searches conducted by a public employer, the Court must "balance the invasion of the employees' legitimate expectations of privacy against the government's need for supervision, control, and the efficient operation of the workplace." *O'Connor*, 480 U.S. at 719–20 (plurality opinion).

It is well settled that a warrantless search or seizure is presumptively unreasonable under the Fourth Amendment. U.S. CONST. amend. IV; *see also United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009). However, because the touchstone of the Fourth Amendment is "reasonableness," there are certain exceptions to the warrant requirement. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citations omitted). "Lists of recognized exceptions are inclusive rather than exclusive." *Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010). "[T]he Supreme Court held in [*O'Connor*], that a workplace search by a government employer to investigate work-related misconduct is not subject to the probable cause and warrant requirements of the Fourth Amendment. Rather, such a search is legal so long as it is reasonable under all of the circumstances." *Jackson v. City of Columbus*, 194 F.3d 737, 754 (6th Cir. 1987) (citation omitted), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S 506 (2002). In order for a workplace search to be reasonable, it must be "justified in its inception"

and "reasonably related in scope to the circumstances" that prompted the search. *See O'Connor*, 480 U.S. at 726 (plurality opinion).

In *Jackson,* the Sixth Circuit "upheld the dismissal of a police chief's claim that his office was unreasonably searched after he was reassigned from his duties upon the city's initiation of an investigation against him for improper conduct." *James v. Hampton*, 592 F. App'x. 449, 457 (6th Cir. 2015) (discussing *Jackson*, 194 F.3d at 744); *see also Quon*, 560 U.S. at 762 (extending reasonableness standard to include text messages sent on an electronic device). In *Quon*, "[t]he search was justified at its inception because there were 'reasonable grounds for suspecting that the search [was] necessary for a noninvestigatory work-related purpose.'" 560 U.S. at 761 (alterations in original) (citing *O'Connor*, 480 U.S. at 726).

Here, in December 2014, the Montgomery County Sheriff's Office received and reviewed 105-copied pages of text messages from the NAACP. (Doc. 2-1, at PageID# 89.) The Sheriff's Office review of the information provided by the NAACP was reasonable because law enforcement is permitted to review evidence presented to them by private, third parties. *See Clements-Jeffrey v. City of Springfield*, 810 F. Supp. 2d 857, 868 (S.D. Ohio 2011) ("[W]hen a private party presents evidence to the police, it is 'not incumbent on the police to stop her or avert their eyes.'") (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 489 (1971); *Walter v. United States*, 447 U.S. 649, 656 (1980)).

Following this review, the Sheriff's Office initiated an investigation against Plaintiff Sollenberger and the other employees involved. (Doc. 2-1, at PageID# 89.) The 105-copied pages provided "reasonable grounds" for suspecting that a search of Plaintiff Sollenberger's old cell phone would yield evidence that Plaintiff Sollenberger was "guilty of work-related misconduct." *See O'Connor*, 480 U.S. at 726 (plurality opinion). The pages contained statements

15

by the Plaintiff that were derogatory and expressed a desire to harm minority members of the community. (Doc. 13-2, at PageID# 358–406; Doc. 13-3, at PageID# 407–63.)

As a part of this investigation, digital information was accessed and extracted from Plaintiff Sollenberger's old cell phones to authenticate the pages received by the NAACP. (Doc. 2-1, at PageID# 90.) Like the plaintiff in *Hampton*, Plaintiff Sollenberger has not alleged facts that suggest it would be unreasonable, given the context of the Sheriff's Office investigation against him, to suspect the cell phone to contain evidence of his work-related misconduct. *See, e.g.*, *Manasco v. Bd. of Police Comm'rs*, No. 4:11-CV-00557-CDP, 2011 U.S. Dist. LEXIS 157310, at *9–10 (E.D. Mo. Apr. 1, 2011) (finding that the production of plaintiffs' personal cell phone records of text messages was not an unreasonable intrusion).

Additionally, Sheriff Defendants argue that the search was permissible because Plaintiff Sollenberger's wife, Defendant Sollenberger provided consent. (Doc. 13, at PageID# 341-42.) Whether authority exists to consent to a search is a "recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably . . . ." *Ill. v. Rodriguez*, 497 U.S. 177, 186 (1990).

> The Constitution is no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape.

*Id.* In support of their argument, Sheriff Defendants cite to *Cowans v. Bagley*. (Doc. 13, at PageID# 341–42.) In *Cowans*, the Sixth Circuit found a wife's consent to search the home she shared with her husband valid, stating such determinations "turn[] on what the officers knew (or should have known under the circumstances)." 639 F.3d 241, 250 (6th Cir. 2011). There, the officers were unaware that the husband and wife were separated and did not share bedrooms. *Id.*

16

Here, on December 16, 2014, Sheriff Defendants conducted an interview with Defendant Sollenberger where she explained that "they were currently awaiting final results of their divorce trial", and that "[Plaintiff Sollenberger] moved out of the house."[10] (Doc. 11-2, at PageID# 235.) In January, Sheriff Defendants were able to successfully extract digital information from Plaintiff Sollenberger's old cell phones. (Doc. 2-1, at PageID# 90.) There is a reasonable inference that because Sheriff Defendants were aware of the circumstances surrounding Plaintiff Sollenberger and Defendant Sollenberger's marriage at the time of the search, the Sheriff Defendants' could not have reasonably relied on Defendant Sollenberger's authority to give consent to the search. However, this is distinct from the issue of abandonment, which is not "in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *State v. Freeman*, 414 N.E.2d 1044, 1048 (Ohio 1980) (citing *United States v. Edwards*, 441 F.2d 749, 753 (5th Cir. 1971)).

Although Plaintiff Sollenberger alleges that Defendant Sollenberger possessed his old phone without his knowledge or consent, the pleadings fail to address whether or not the old phone was essentially abandoned, diminishing any reasonable expectation of privacy. Rather, the facts as alleged support the assertion that Sheriff Defendants' could have reasonably concluded Defendant Sollenberger's consent to the search was valid because the old phone was abandoned, as it was left behind at Defendant Sollenberger's residence when he moved out, the phone remained there for an extended period, and the phone did not contain any sort of password protection. (Doc. 11-2, at PageID# 235; Doc. 8, at 9.) Therefore, Plaintiff Sollenberger has not

---

[10] The Court may consider the document because the interview is a part of public record, was referred to in Plaintiff Sollenberger's Complaint (Doc. 2-1, at PageID# 90), and is central to his claims. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

17

alleged facts sufficient to establish Defendant Sollenberger's inability to give consent to the search.

Even assuming Defendant Sollenberger was unable to give valid consent and Sheriff Defendants were aware of this fact—construing all facts in Plaintiff Sollenberger's favor—the Court cannot conclude Plaintiff Sollenberger has plead sufficient facts to support an unreasonable search at its inception. Therefore, the search is removed from the bounds of Fourth Amendment protection. Plaintiff Sollenberger's unlawful search claim fails the first prong of the qualified immunity analysis because he fails to state a constitutional claim.

Next, for a search to be reasonable in scope, it must reasonably relate to the objectives of the search and not excessively intrude in light of the nature of the misconduct. *O'Connor*, 480 U.S. at 726 (plurality opinion). Sheriff Defendants argue that the search was reasonable in scope because they extracted the same digital information extracted by Defendants Sollenberger and Estridge. (Doc. 13, at PageID# 340.) Furthermore, Sheriff Defendants argue that extracting this information was necessary in their investigation to authenticate the 105-copied pages sent by the NAACP, and ultimately, to determine if a violation of their professional conduct rules had occurred. (*Id.*, at PageID# 340.) In response, Plaintiff Sollenberger argues that the search in *Quon*—relied upon by Sheriff Defendants—is distinguishable because a personal cell phone was not searched, but rather, a work-issued cell phone where the employee had notice of possible searches. (Doc. 19, at 8.)

The Court in *Quon* did state "OPD's audit of messages on Quon's employer-provided pager was not nearly as intrusive as a search of his personal e-mail account or pager, or a wiretap on his home phone line, would have been." 560 U.S. at 762–63. However, the Court further clarified, the fact "[t]hat the search did reveal intimate details of Quon's life does not make it

18

unreasonable[,]" and thus, was permissible in scope. *Id.* at 763. Furthermore, although the cell phone has been used as a personal cell phone in the past, Defendant Sollenberger disclosed during her December interview that it was also used for work purposes and claimed as a work expenditure for tax purposes. (Doc. 11-2, at 19.) The search was reasonable in scope because "the extracted digital information [was] similar to or the same as the digital information [Defendants Sollenberger and Estridge] were able to extract," the cell phone was used for work purposes, and the information was extracted in furtherance of the Sheriff Office's investigation. (Doc. 2-1, at PageID# 90; Doc. 11-2, at 19.) Moreover, the search of Plaintiff Sollenberger's old cell phone is not unreasonable in scope simply because the search may have revealed intimate details of Plaintiff Sollenberger's life.

Nevertheless, had Plaintiff Sollenberger alleged facts establishing a violation of a constitutional right, he must also allege plausible facts that the violation was of a "constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citing *Harlow*, 457 U.S. at 818 (stating, "bare allegations . . . should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery.")). "Moreover, the allegations must demonstrate that each defendant officer, through his or her own individual actions, *personally* violated plaintiff's rights under clearly established law." *Moseley*, 790 F.3d at 653 (citing *Iqbal*, 556 U.S. at 676; *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014)). "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, or the district

court itself, or case law from other circuits which is directly on point." *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999) (internal quotation marks and citations omitted).

Here, Sheriff Defendants argue that the federal courts have not clearly established the parameters of reasonable searches of electronic communications, and specifically, employee text messages. (Doc. 13, at PageID# 347–48.) "The Supreme Court's more-recent precedent shows a marked lack of clarity in what privacy expectations as to content of electronic communications are reasonable. *Rehberg v. Paulk*, 611 F.3d 828, 844 (11th Cir. 2010) (discussing *Quon*, 560 U.S. at 748). The Supreme Court in *Quon* stated that it "must proceed with care when considering the whole concept of privacy expectations in communications made on electronic equipment owned by a government employer", 560 U.S. at 759, and that it "touches issues of far reaching significance[.]" *Id.* at 750. The Court cautioned that "[t]he judiciary risks error by elaborating too fully on the Fourth Amendment implications of emerging technology before its role in society has become clear." *Id.* at 759 (declining to make a broad holding because of far reaching implications).

Plaintiff Sollenberger argues that his constitutional right was clearly established based on the Supreme Court's decision in *Riley v. California.* (Doc. 19, at 4–5, 16.) The Court stated that officers must generally secure a warrant before conducting a search of data on cell phones. *Riley v. California*, 134 S. Ct. 2473, 2485 (2014). However, *Riley* interprets the warrant exception for searches incident to arrest, whereas the case here involves the parameters of the warrant exception for investigations of employee misconduct. *See United States v. Lichtenberger*, 786 F.3d 478, 487 (6th Cir. 2015) (stating the *Riley* Court's holding dealt with the search incident to arrest exception). Furthermore, the Court in *Riley* specifically stated, "even though the search

20

incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone." 134 S. Ct. at 2495.

Assuming *arguendo*, Plaintiff Sollenberger sufficiently pleaded the first element of qualified immunity; he has nevertheless failed to establish actions that were objectively unreasonable and constituted a violation of a clearly established constitutional right. Therefore, Plaintiff Sollenberger's unlawful search claim fails the second and third elements of the qualified immunity analysis. Thus, the Court DISMISSES Plaintiff Sollenberger's unlawful search claim, without prejudice.

### 2. Failure to train against Defendant Plummer (Fifth Claim)

Defendant Plummer is being sued in his official capacity as Sheriff of Montgomery County, Ohio. (Doc. 2-1, at PageID# 88.) "[A] suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent,' and 'imposes liability on the entity that [the officer] represents." *Wood v. Plummer*, No. 3:11-CV-00032, 2011 U.S. Dist. LEXIS 79712, at *19 (S.D. Ohio June 27, 2011) (alterations in original) (quoting *McMillian v. Monroe County*, 520 U.S. 781, n.2 (1997), *adopted by* 2011 U.S. Dist. LEXIS 79704 (S.D. Ohio July 21, 2011) (Rose, J.). Therefore, Plaintiff Sollenberger's Fifth Claim is a claim against Montgomery County.

However, "'a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents' on a theory of vicarious liability." *Shoup*, 974 F. Supp. 2d at 1084 (quoting *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978)). In order to state a claim against a local government under Section 1983, a plaintiff "must show: 1) a deprivation of his constitutional or federal rights, 2) that occurred pursuant to a custom, usage, or official policy of the municipality." *Wood*, 2011 U.S. Dist. LEXIS 79712, at *19 (citing *Monell*,

436 U.S. at 690–91). Section 1983 will only attach to a county when the execution of its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy," caused the plaintiff's injury. *Monell*, 436 U.S. at 694; *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (stating the government entity must itself cause the constitutional violation at issue through execution of its policies or customs)). "Thus, a [county] may be held liable in a Section 1983 action for a violation of constitutional rights directly caused by its failure to train municipal employees, including its police officers, resulting from its official policy or custom." *Shoup*, 974 F. Supp. 2d at 1084 (citing *Harris*, 489 U.S. at 380).

A failure to train claim can only be based on insufficient police training when the failure equates to a "deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388. "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the [county's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Here, Plaintiff Sollenberger alleges that Defendant Plummer "failed to instruct, supervise, control, or discipline on a continuing basis the [Sheriff Defendants] regarding their duties to refrain from unlawfully gaining access to" Plaintiff Sollenberger's personal cell phone. (Doc. 2-1, at PageID# 94.) Construing all facts in Plaintiff Sollenberger's favor, this generally meets the requirements of the first element because Plaintiff Sollenberger does allege that the training was insufficient for lawful searches, the basis of the alleged constitutional violation. Therefore, Plaintiff Sollenberger states the first element of a failure to train claim.

The second element is met in two possible situations. *Ellis*, 455 F.3d at 700. First, by alleging facts sufficient to demonstrate a pattern of constitutional violations or repeated complaints thereof, with the county's response or lack thereof amounting to a policy of deliberate indifference. *See Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). Here, Plaintiff Sollenberger states "[t]he Sheriff failed to instruct, supervise, control, or discipline on a continuing basis . . .", (Doc. 2-1, at PageID# 94.) and "knew, or had he diligently exercised his duties of instruction, supervision, control, and discipline on a continuing basis, would have known that the wrongs committed upon Plaintiff Sollenberger were about to be committed." (*Id.*) Plaintiff Sollenberger fails to make any factual allegations to support this assertion beyond a "formulaic recitation" of what is loosely construed to be an element of a deliberate indifference claim. *Twombly*, 550 U.S. at 555. The recitation does not provide support to the claim he purports to state, and the factual allegations fail to mention any pattern of violations.

The other situation where a plaintiff can sufficiently state a claim for failure to train amounting to deliberate indifference is to allege a "failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction." *Shaner*, 172 F.3d at 931. "The Supreme Court has described this situation as one in which 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need.'" *Shoup*, 974 F. Supp. 2d at 1085 (quoting *Harris*, 489 U.S. at 390). Plaintiff Sollenberger describes Defendant Plummer's "knowledge of [employee's] inadequate training and experience for the job" and failure "to properly train and educate police officers to carry out their duties[.]" (Doc. 2-1, at PageID# 93–94.) However, Plaintiff Sollenberger provides no factual allegation that might support these claims beyond simply reciting that Defendant

Plummer failed to instruct, supervise, control, and discipline employees. Therefore, Plaintiff Sollenberger has failed to sufficiently plead the second element of his failure to train claim.

Although failing to sufficiently plead one element is adequate for dismissal, the Court notes that Plaintiff Sollenberger also fails to allege facts to state the third element of his failure to train claim. Here, he has failed to make any factual allegations explaining how the County failed to train its officers, as well as any other factual allegations that would support his claim, beyond the search of his old cell phone. Therefore, the Court DISMISSES Plaintiff Sollenberger's failure to train claim, without prejudice.

## B. Plaintiff Sollenberger's state law claims against Defendant Plummer and Sheriff Defendants

### 1. Statutory Immunity for Ohio state law claims

Defendant Plummer and Sheriff Defendants argue that they enjoy statutory immunity from Ohio tort law claims as to a political subdivision and its employees because Plaintiff Sollenberger sued them in their individual and official capacities, respectfully. (Doc. 13, at PageID# 343.) In response, Plaintiff Sollenberger argues that Defendant Plummer is precluded from immunity because the search, and the claims related thereto, arose out of Defendant Plummer's employment relationship. (Doc. 19, at 11–12.)

R.C. 2744.02(A)(1) provides "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." There are also exceptions to a political subdivision's immunity, as well as certain defenses to those exceptions. *Sampson v. Cuyahoga Metro. Hous. Auth.*, 966 N.E.2d 247, 250 (Ohio 2012) (citing OHIO REV. CODE §§ 2744.02(B), 2744.03,

2744.09). "The Political Subdivision Tort Liability Act . . . requires a three-tiered analysis to determine whether immunity is applicable[:]"

> The first tier sets out a general rule that political actors are not liable for damages. OHIO REV. CODE §2744.02(A)(1). In the second tier, the Court must determine whether any of the five exceptions to the general rule of immunity is applicable. OHIO REV. CODE §2744.02(B). The third tier of the analysis requires consideration of whether a defense to liability applies that restores immunity. OHIO REV. CODE §§ 2744.02(B)(1)(a)–(c), 2744.03.

*Allen v. Clark*, No. 1:13-CV-00326, 2014 U.S. Dist. LEXIS 90807, at *30 (S.D. Ohio July 3, 2014).

The first determination is whether the employees fall within the definition of a "political subdivision." *Hubbard*, 780 N.E.2d at 546. "[W]hen allegations are made against the elected holder of an office of a political subdivision who is sued in an official capacity, the officeholder is also entitled to the grant of immunity contained in R.C. 2744.02." *Lambert v. Clancy*, 927 N.E.2d 585, 591 (Ohio 2010). "Claims brought against [a county sheriff] in his official capacity are the equivalent of claims brought against the county as a government entity." *Coley v. Lucas Cnty.*, 799 F.3d 530, 542 (6th Cir. 2015) (citing *Chesher v. Neyer*, 477 F.3d 784, 796–97 (6th Cir. 2007)). "Federal courts have held that sheriffs and sheriff's deputies are considered employees of the county, which is a political subdivision of the state." *Coley*, 799 F.3d at 542–43 (citing OHIO REV. CODE § 2744.01(F); *Sanford v. Cnty. of Lucas*, No. 3:07-CV-03588, 2009 U.S. Dist. LEXIS 20774, at *8 (N.D. Ohio, Mar. 16, 2009) (citing cases)). Thus, Defendant Plummer and Sheriff Defendants meet the first tier.

The next step is determining if any of the five exceptions to immunity enumerated in Section 2744 apply. *Shoup*, 974 F. Supp. 2d at 1088 (citing *Hubbard*, 780 N.E.2d at 546). The burden is on the plaintiff to establish an exception to immunity pursuant to Section 2744.04(B). *See Allen*, 2014 U.S. Dist. LEXIS 90807, at *30–31 (dismissing claims where plaintiffs failed to

identify an exception to a city's contended immunity). Defendant Plummer and Sheriff Defendants argue that Plaintiff Sollenberger's Complaint fails to identify an applicable exception to the Act. (Doc. 13, at PageID# 344.)

In response, Plaintiff Sollenberger contends that Section 2744.09(B) is applicable and excepts his claim from immunity under Section 2744.02. (Doc. 19, at 11–12.) Section 2744.09(B) states:

> This chapter does not apply to, and shall not be construed to apply to, the following: . . . (B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision . . . .

Plaintiff Sollenberger argues that R.C. 2744.09(B) renders R.C. Chapter 2744 precluded because the state law claims alleged arose out of Defendant Plummer's employment relationship. (Doc. 19, at 12.) Plaintiff Sollenberger concedes that this argument is applicable only to Montgomery County, and not the individual Sheriff Defendants. (*Id.*) The Ohio Supreme Court in *Sampson* stated, "[w]hen an employee of a political subdivision brings a civil action against the political subdivision alleging an intentional tort, that civil action may qualify as a 'matter that arises out of the employment relationship' within the meaning of R.C. 2744.09(B)." *Sampson v. Cuyahoga Metro. Hous. Auth.*, 966 N.E.2d 247, 252 (Ohio 2012). Furthermore, "an employee's action against his . . . political—subdivision employer arises out of the employment relationship between the employee and the political subdivision within the meaning of R.C. 2744.09(B) if there is a causal connection or causal relationship between the claims raised by the employee and the employment relationship." *Id.*

In *Sampson*, a political subdivision accused the plaintiff of misconduct when working as a plumber, including responding to service calls and emergencies as well as his use of the

26

employer's gas cards during transportation. Here, Plaintiff Sollenberger argues that his actions arose out of his employment relationship because "the search was motivated by alleged employee misconduct and protecting the public[,]" stating the position of Sheriff Defendants that Plaintiff Sollenberger was unable to fulfill his duties as a Detective. (Doc. 19, at 12.) Consistent with *Sampson*, Plaintiff Sollenberger has alleged facts sufficient to demonstrate his actions arose out of his employment relationship because the Sheriff's Office accused and investigated Plaintiff Sollenberger of misconduct in carrying out his duties as an employee. Therefore, R.C. 2744.09(B) would remove the immunity protection afforded under Section 2744.02 to Defendant Plummer.

It is unclear whether R.C. 2744.03(A)(3) reattaches the immunity protection removed by Section 2744.09(B). *See Fuller v. Cuyahoga Metro. Hous. Auth.*, No. 1:06-CV-2093, 2008 U.S. Dist. LEXIS 8730, at *53 (N.D. Ohio Feb. 6, 2008) (noting a lack of clarity in the application of R.C. 2744.03(A)(3)). Nonetheless, Section 2744.09 only precludes the application of Chapter 2744, and Defendant Plummer argues that he is entitled to statutory immunity pursuant to R.C. 311.05, in addition to R.C. 2744.02. (Doc. 21, at 6.) *See Coley v. Lucas Cnty.*, No. 3:09-CV-00008, 2014 U.S. Dist. LEXIS 8260, at *10–17 (N.D. Ohio Jan. 23, 2014) (analyzing R.C. 311.05 for both official and individual capacity immunity), *aff'd*, 779 F.3d 530 (6th Cir. 2015); *Amrhein v. Telb*, No. L-06-1170, 2006 Ohio App. LEXIS 5032, at *5 (Ohio Ct. App. Sept. 29, 2006) (stating R.C. 311.05 establishes qualified immunity for a sheriff). Under this Section, a "sheriff shall only be responsible for the . . . misconduct in office of any of his deputies if he orders, has prior knowledge of, participates in, acts in reckless disregard of, or ratifies the . . . misconduct in office of the deputy." OHIO REV. CODE § 311.05.

Here, Plaintiff Sollenberger does not allege that Defendant Plummer ordered, possessed prior knowledge of, participated in, or acted in reckless disregard of Sheriff Defendants' actions in searching the old phone. Rather, Plaintiff Sollenberger argues in his response "[Defendant Plummer] undoubtedly ratified all of the employees' prior conduct when [Plaintiff Sollenberger] was placed on administrative leave and subsequently terminated." (Doc. 19, at 14.) An inference may be made that Defendant Plummer, as Sheriff, was aware of Plaintiff Sollenberger's termination. However, even assuming this conclusory statement as fact, it does not support Defendant Plummer's reckless disregard of, or involvement in, the alleged misconduct of his deputies, which was the alleged improper search of the old cell phone, not Plaintiff Sollenberger's termination.

Moreover, there are no facts alleged demonstrating any involvement, knowledge of, participation, or reckless disregard of the alleged misconduct by Defendant Plummer that would remove him from the protections of R.C. 311.05. "Negligence or inaction alone are insufficient in themselves to show ratification of an agent's unauthorized act, but ratification must follow knowledge of the facts." *Morr v. Crouch*, 249 N.E.2d 780, 784 (Ohio 1989). "[A]n Ohio Appellate Court interpreted this phrase to mean that 'inaction or silence alone is not enough to prove ratification of an agent's unauthorized action, but that ratification can be shown by inaction or silence where the principal is fully informed of all the material facts to the agent's actions.'" *Coley*, 2014 U.S. Dist. LEXIS 8260, at *16 (quoting *Amato v. Heinika Ltd.*, No. 84479, 2005 Ohio App. LEXIS 206, *5 (Ohio App. Ct. 2005)).

While Plaintiff Sollenberger did allege he was placed on administrative leave and subsequently terminated, a fact that must be accepted as true; Plaintiff Sollenberger does not allege any facts beyond what can be inferred as mere inaction or silence, nor does he allege that

Defendant Plummer was fully informed of all material facts of the alleged misconduct. Therefore, the Court DISMISSES Plaintiff Sollenberger's invasion of privacy claim, civil claim pursuant to R.C. 2307.60, and civil conspiracy claim against Defendant Plummer, without prejudice.

Additionally, Plaintiff Sollenberger argues certain exceptions that fall within the second tier of the analysis and, if plausibly stated, are applicable against Sheriff Defendants. (Doc. 19, at 14.)

### a.  Individual Capacity Immunity – Sheriff Defendants

Plaintiff Sollenberger argues that Section 2744.02(B)(5) applies to Sheriff Defendants because civil liability may be imposed upon a political subdivision by a section of the Ohio Revised Code. (*Id.*, at 14.) Additionally, Plaintiff Sollenberger argues liability is imposed under the exceptions to immunity pursuant to R.C. 2744.03(A)(6)(a)-(c). (*Id.*) In contrast, Sheriff Defendants argue that Section 2744.02(B)(5) is inapplicable to individual employees and that Plaintiff Sollenberger has not alleged facts to support the application of any of the three exceptions in R.C. 2744.03(A)(6); therefore, the statute provides them with statutory immunity for Plaintiff Sollenberger's state law claims. (Doc. 13, at PageID# 345.)

Here, Plaintiff Sollenberger does not explicitly state that Sheriff Defendants were sued in their individual capacities. "[W]hen a plaintiff does not allege capacity specifically; the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (6th Cir. 1995). In the analysis, the Court must consider factors, such as "the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to

determine whether the defendant had actual knowledge of the potential for individual liability." *Moore v. City of Harriman*, 272 F.3d 769, 773 n.1 (6th Cir. 2001) (citing *Biggs*, 66 F.3d at 61).

In Plaintiff Sollenberger's Complaint, the caption names each Sheriff Defendant, but does not provide a designation describing the capacity in which they are sued. (Doc. 2-1, at PageID# 87–88.) The only party with such a designation is Defendant Plummer, who "is being sued in his official capacity as the Sheriff of Montgomery County." (*Id.*, at PageID# 88.) Plaintiff Sollenberger names each individual Sheriff Defendant, followed by "was an employee of the Montgomery County Sheriff's Office during the relevant time period, and was operating within the scope of employment at all times alleged herein." (*Id.*) Nonetheless, Plaintiff Sollenberger has sued the Sheriff Defendants for three torts under Ohio law. (*Id.*, at PageID# 90–92, 94.) Additionally, Plaintiff Sollenberger invoked an exception to statutory immunity for individual defendants under R.C. § 2744.03(A)(6). (Doc. 19, at 14.) Lastly, the Sheriff Defendants raised the qualified immunity defense against Plaintiff Sollenberger's federal claims, which is only applicable for defendants sued in their individual capacity. (Doc. 13, at PageID# 346–49.) In light of these circumstances, it is appropriate to analyze statutory immunity for Sheriff Defendants as individuals under Section 2744.03.

Pursuant to Section 2744.03(A)(6), an individual employee of a political subdivision is entitled to immunity from tort liability unless "(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; [or] (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in wanton or reckless manner; [or] (c) [c]ivil liability is expressly imposed upon the employee by" another provision of the Revised Code. Plaintiff Sollenberger argues that the second and third exceptions apply, because "there are facts and reasonable inferences that the Sheriff Defendants abused the

30

authority with which they are vested[,]" and the United States Constitution and the Ohio Revised Code impose liability on a political subdivision. (Doc. 19, at 14.) Sheriff Defendants argue that Plaintiff Sollenberger has failed to allege any facts that amount to wanton or reckless behavior, nor that their investigation was undertaken with bad faith or a malicious purpose. (Doc. 21, at 9.) Additionally, Sheriff Defendants argue that neither the United States Constitution nor the Ohio Revised Code impose liability. (*Id.*)

i.  **Wanton or Reckless Conduct against Sheriff Defendants**

"Wanton" and "reckless" conduct are two different degrees of care under the statute. *Anderson v. City of Massillon*, 983 N.E.2d 266, 267 (Ohio 2012). "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Id.* Wanton misconduct is a "very high standard" that is not met by mere negligence. *Messer v. Rohrer*, No. C-3-95-270, 1997 U.S. Dist. LEXIS 23753, at *43 (S.D. Ohio Mar. 31, 1997). "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *City of Massillon*, 983 N.E.2d at 267.

In Plaintiff Sollenberger's Complaint, there is not a state law claim that specifically mentions Defendants Parin or Cavender. (Doc. 2-1, at PageID# 90–92, 94.) The facts of his Complaint allege that both officers were employed by the Montgomery County Sheriff's Office, and were operating within the scope of their employment. (*Id.*, at PageID# 88.) The facts mention Defendant Cavender once more, stating that he arrived at Defendant Sollenberger's residence, but was unable to retrieve the cell phone at that time. (*Id.*, at PageID# 90.) Plaintiff Sollenberger's Complaint does not contain any other factual allegations regarding either officer.

(*Id.*, at PageID# 88–90.) Therefore, Plaintiff Sollenberger's claim fails as a matter of law. Furthermore, the lack of factual allegations in the Complaint prevents the Court from analyzing the alleged conduct under Section 2744.03(A)(6). Thus, the Court declines to reach the issue of statutory immunity for Plaintiff Sollenberger's state law claims asserted against Defendants Parin and Cavender under R.C. 2744.03(A)(6)(b).

Defendant Hutson is not specifically mentioned in Plaintiff Sollenberger's state law claims, but is mentioned four times in the Complaint's factual allegations. (*Id.*, at PageID# 88–90.) Like Defendants Parin and Cavender, Plaintiff Sollenberger's Complaint alleges that Defendant Hutson was employed by the Montgomery County Sheriff's Office, that he was operating within the scope of his employment, and that he had accompanied Defendant Cavender on his unsuccessful trip to Defendant Sollenberger's residence. (*Id.*) In addition, Defendant Sollenberger is alleged to have met with Defendant Hutson, who imaged two phones—one containing the 105-copied pages of text messages received by the NAACP and another containing no such information. (*Id.*, at PageID# 90.)

Here, Plaintiff Sollenberger does not sufficiently plead facts to demonstrate Defendant Hutson's failure to exercise any care where there was a great probability of harm, nor do the facts as pleaded sufficiently demonstrate a reckless disregard to conduct an unreasonable search that is substantially greater than negligent conduct. There are no additional facts alleged beyond that a search of his old cell phone occurred, and was conducted by Defendant Hutson within the scope of his employment. Therefore, Defendant Hutson's search of Plaintiff Sollenberger's phone, as plead, does not meet the "very high standard" of "wanton" and "reckless" behavior. Additionally, the search itself was reasonable pursuant to the Office's employee misconduct investigation. *See supra* Part III(A)(1).

32

Accordingly, the Court grants Defendant Hutson's request for statutory immunity under Section 2744.03(A)(6) against Plaintiff Sollenberger's state law tort claims.

**ii.      Expressly Imposed Liability**

Plaintiff Sollenberger has provided several arguments for where civil liability is expressly imposed as required by R.C. 2744.03(A)(6)(c). (Doc. 19, at 14.) Section 2744.03(A)(6)(c) provides that employees are immune unless:

> Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

First, Plaintiff Sollenberger argues civil liability is expressly imposed through alleged violations of his Constitutional rights. (Doc. 19, at 14.) However, "constitutional guarantees and prohibitions" do not expressly impose liability for their violation. *See W.P. v. City of Dayton*, No. 22549, 2009 Ohio App. LEXIS 70, at *4 (Montgomery Cty. Jan. 9, 2009). Second, Plaintiff Sollenberger argues that civil liability is expressly imposed by R.C. 2744.03(A)(6) through its exceptions. (Doc. 19, at 14.) However, Section 2744.03(A)(6) does not itself expressly impose civil liability, but rather, that section creates an immunity defense. *See Elston v. Howland Local Sch.*, 865 N.E.2d 845, 848 (Ohio 2007) (stating defendant school district relied on the immunity defense in R.C. 2744.03(A)).

Finally, Plaintiff Sollenberger argues that R.C. 2307.60 and 2913.04 expressly impose liability as a civil claim for an uncharged criminal act. (Doc. 2-1, at PageID# 91–92.) Section 2307.60 provides "anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action . . . ." Section 2913.04 is a criminal statute and provides "no

person, in any manner and by any means, including, but not limited to, computer hacking, shall knowingly gain access to" another's electronic devices. Sheriff Defendants argue that these statutes do not expressly impose liability on a political subdivision, but rather generally impose liability on "persons." In *Cramer v. Auglaize Acres*, the Ohio Supreme Court determined that the use of the term "person" in a state statute "was too general to expressly impose liability on an employee of a political subdivision." 865 N.E.2d 9, 17 (Ohio 2007); *see also O'Toole v. Denihan*, 889 N.E.2d 505, 516 (Ohio 2008) (finding no indication by the General Assembly to abrogate the immunity with the use of the word "person"). Furthermore, the court found additional support for this holding because the statute did not define the term "person." *Cramer*, 865 N.E.2d at 17.

Here, like *Cramer* and *O'Toole*, the statutes use the term "person" and do not specifically identify an intention to abrogate the immunity granted to an employee of a political subdivision. However, Chapter 2307 defines "Person" as having "the same meaning as in division (C) of section 1.59 of the Revised Code and additionally includes a political subdivision and the state." OHIO REV. CODE § 2307(F). Under Chapter 1, "'Person' includes an individual, corporation, business trust, estate, trust, partnership, and association." OHIO REV. CODE § 1.59(C). The statute is silent as to the employees of a political subdivision, an aspect necessary to constitute expressly imposed liability. *Compare Satterfield v. Karnes*, 736 F. Supp. 2d 1138, 1154 (S.D. Ohio 2010) (finding an Ohio statute expressly imposes liability where the definition of "Person" expressly includes employees), *with Cramer*, 865 N.E.2d at 17 (finding an Ohio statute's use of "Person," when undefined, as too general to expressly impose liability). Although "Person" is defined in Chapter 2307, neither "Employee" nor "Employee of a Political Subdivision" is included in this

34

definition. Therefore, Chapter 2307's use of the word "Person" is too general to expressly impose liability, and the exception is inapplicable.

For the foregoing reasons, the Court finds Defendant Hutson is entitled to statutory immunity for Plaintiff Sollenberger's invasion of privacy claim, civil claim pursuant to R.C. 2307.60, and civil conspiracy claim; therefore, these claims are DISMISSED, without prejudice. Additionally, Plaintiff Sollenberger's invasion of privacy claim, civil claim pursuant to R.C. 2307.60, and civil conspiracy claim, against Defendants Parin and Cavender are DISMISSED as a matter of law, without prejudice.

### C.  Sufficiency of alleged state law claims

In addition to statutory immunity, Defendant Plummer and Sheriff Defendants move for dismissal as a matter of law on Plaintiff Sollenberger's state law claims because they argue that he has not sufficiently alleged facts to support such claims. (Doc. 13, at PageID# 335–36.) The Court notes that it has granted statutory immunity to Defendants Plummer and Hutson on all of Plaintiff Sollenberger's state law tort claims, and declined to reach the issue of statutory immunity for Defendants Parin and Cavender. However, the Court did find that Plaintiff Sollenberger's state law claims failed as a matter of law against Defendants Parin and Cavender. Therefore, the Court must only test for sufficiency Plaintiff Sollenberger's state law claims against Defendants Sollenberger and Estridge for invasion of privacy, civil claim pursuant to R.C. 2307.60, tortious interference with an employment relationship, and civil conspiracy. Nonetheless, the Court will also analyze the state law claims against Defendant Plummer and Sheriff Defendants for sufficiency.

Defendant Sollenberger has failed to present an argument as to why the Court should dismiss all state law claims against her. (Doc. 2-1, at PageID# 126–27.) The Local Rules of this

District provide that "[a]ll Motions . . . shall be accompanied by a memorandum in support thereof that shall be a brief statement of the grounds, with citation of authorities relied upon." S.D. Ohio Civ. R. 7.2(a)(1). In failing to provide any discussion beyond "Jennifer A. Sollenberger, hereby requests this Court to dismiss the action of the Plaintiff[,]" Defendant Sollenberger has failed to comply with the Court's requirement of providing the grounds upon which the motion relies. Despite this failure, Defendant Sollenberger's filings are liberally construed because she is proceeding pro se. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating court's hold pleadings of pro se litigants to less stringent standards than pleadings drafted by lawyers); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (stating pro se plaintiffs are entitled to a liberal construction of their filings and pleadings). Therefore, the sufficiency of Plaintiff Sollenberger's claims against Defendant Sollenberger will also be analyzed.

### a. Invasion of Privacy (First Claim)

"In Ohio, the tort of invasion of privacy includes four distinct causes of action: (1) intrusion into plaintiff's seclusion, solitude, or private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity that places plaintiff in a false light; and (4) appropriation of plaintiff's name or likeness for defendant's advantage." *Yoder v. Ingersoll-Rand Co.*, No. 97-3710, 1998 U.S. App. LEXIS 31993, at *5 (6th Cir. 1998). "Ohio recognizes the tort of invasion of the right to privacy for 'the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.'" *Charvat v. NMP, LLC*, 656 F.3d 440, 452 (6th Cir. 2011) (quoting *Housh v. Peth*, 133 N.E.2d 340 syllabus para. 2 (Ohio 1956)). "'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs

36

or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" *Charvat*, 565 N.E.2d at 452–53 (citing *Sustin v. Fee*, 431 N.E.2d 992, 993–94 (Ohio 1982)).

Collectively, defendants argue that Plaintiff Sollenberger has failed to sufficiently plead facts to establish that he had a reasonable expectation of privacy in the phone or the electronic information contained therein. (Doc. 13, at PageID# 348; Doc. 17, at 3.) In order to have a legitimate expectation of privacy, society must be prepared to recognize the expectation as reasonable. *Rakas v. Illinois*, 439 U.S. 128, 143–44 (1978). In Ohio, a totality of circumstances analysis is the appropriate test. *See Lazette v. Kulmatycki*, 949 F. Supp. 2d 748, 761 (N.D. Ohio 2013); *see also Savoy v. United States*, 604 F.3d 929, 935 (6th Cir. 2010) (applying state totality of circumstances law to tort claims of intrusion). Although property ownership is a factor in determining whether someone has a "legitimate expectation of privacy in the invaded place[,]" ownership is neither the beginning nor the end of the Court's inquiry. *United States v. Salvucci*, 448 U.S. 83, 91 (1980) (quoting *Rakas*, 439 U.S. at 140).

Plaintiff Sollenberger alleges that Defendant Sollenberger took the phone without his knowledge or consent, extracted digital information, such as text messages and pictures, and then, reviewed the information before turning over copies of the text messages to the NAACP and the Montgomery County Sheriff's Office. (Doc. 2-1, at PageID# 89–90.) However, construing the alleged facts in a light most favorable to the nonmoving party, the phone was Plaintiff Sollenberger's old cell phone, but Defendant Sollenberger had possession of the cell phone. (*Id*., at PageID# 89.) Furthermore, Defendant Sollenberger was in possession of the cell phone "for an extended and continuous period of time." (Doc. 8, at 31.) The phone was one of Plaintiff Sollenberger's old cell phones that he left when he moved out of the house, it was

located in Defendant Sollenberger's bedroom dresser drawers, and it was not password protected. (Doc. 11-2, at PageID# 235; Doc. 8, at 9.) Defendant Estridge argues that these facts and circumstances support the assertion that Plaintiff Sollenberger essentially abandoned the cell phone at Defendant Sollenberger's residence. (Doc. 22, at PageID# 565–66.)

The issue of abandonment is not "in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *State v. Freeman*, 414 N.E.2d 1044, 1048 (Ohio 1980) (citing *United States v. Edwards*, 441 F.2d 749, 753 (5th Cir. 1971)). Although Plaintiff Sollenberger alleges that Defendant Sollenberger possessed his old cell phone without his knowledge or consent, the pleadings are devoid of any indication that Plaintiff Sollenberger maintained a reasonable expectation of privacy in the cell phone. Here, Plaintiff Sollenberger left behind the phone at Defendant Sollenberger's residence when he moved out, the phone remained there for an extended period; and the phone did not contain any sort of password protection. Therefore, Plaintiff Sollenberger has not alleged facts sufficient to establish he maintained a reasonable expectation of privacy in the cell phone.

Assuming *arguendo*—Plaintiff Sollenberger has sufficiently plead facts to support a reasonable expectation of privacy in his cell phone—his Complaint is still insufficient to state a claim for invasion of privacy. "The intrusion 'must be of such a character as would shock the ordinary person to the point of emotional distress.'" *Stonum v. U.S. Airways, Inc.*, 83 F. Supp. 2d 894, 905 (S.D. Ohio 1999) (quoting *Haller v. Phillips*, 591 N.E.2d 305, 307 (Ohio Ct. App. 1990) (stating it is the same standard as applied to intentional infliction of emotional distress claims)). Although cell phones generally contain personal information, such as e-mails, text

38

messages, and pictures, a reasonable person would not be "shocked" by another's access to their old cell phone that had been essentially "abandoned" at their soon to be ex-wife's home for an extended period. *See Farinacci v. City of Garfield Heights*, No. 08-CV-1355, 2010 U.S. Dist. LEXIS 30406, at *52 (N.D. Ohio Mar. 30, 2010) (finding a house "essentially abandoned" for purposes of an invasion of privacy claim where the plaintiff no longer lived there, the home was no longer maintained, and was in foreclosure proceedings); *State v. Dailey*, No. 8-10-01, 2010 Ohio App. LEXIS 4068, at *9 (Ohio Ct. App. Oct. 4, 2010) (finding abandonment where defendant's jacket containing his cell phone slipped off in a struggle to get away, and the defendant never made a request to have the items returned).

Accordingly, Plaintiff Sollenberger has failed to plausibly state a claim for invasion of privacy under Ohio law; therefore, the Court DISMISSES Plaintiff Sollenberger's invasion of privacy claim against all Defendants, without prejudice.

### b. Civil Claim pursuant to R.C. 2307.60 (Second Claim)

Plaintiff Sollenberger asserts his second claim pursuant to R.C. 2307.60, "which permits a person injured by another's criminal condut to recover against the perpetrator of the crime." *Lazette v. Kulmatycki*, 949 F. Supp. 2d 748, 761 (N.D. Ohio 2013). Here, R.C. 2913.04(B) is the crime asserted, which states:

> No person, in any manner and by any means, including, but not limited to, computer hacking, shall knowingly gain access to, attempt to gain access to, or cause access to be gained to any computer, computer system, computer network, cable service, telecommunications device, telecommunications service, or information service without the consent of, or beyond the scope of express or implied consent of, the owner of the computer, computer system, computer network, cable service, telecommunications device, telecommunications service, or information service or other person authorized to give consent.

Defendant Estridge argues that R.C. 2307.60 does not provide Plaintiff Sollenberger a separate cause of action, and thus, has failed to state a claim for relief. (Doc. 17, at 5.) Essentially,

Plaintiff Sollenberger is seeking civil recovery for an uncharged criminal act. However, Section 2307.60 does not create a separate cause of action for a criminal statute. *See Cobra Pipeline Co. v. Gas Nat., Inc.*, No. 1:15-CV-00481, 2015 U.S. Dist. LEXIS 124236, at *19 (N.D. Ohio Sept. 17, 2015). "Instead, R.C. 2307.60 . . . is merely a codification of the common law that a civil action is not merged in a criminal prosecution." *Replogle v. Montgomery Cnty.*, No. 3:09-CV-00102, 2009 U.S. Dist. LEXIS 130719, at *15 (S.D. Ohio May 1, 2009) (quoting *Edwards v. Madison Twp.*, No. 97APE06–819, 1997 Ohio App. LEXIS 5397, at *17–18 (Ohio Ct. App. Nov. 25, 1997)), *report and recommendations adopted by* 2009 U.S. Dist. LEXIS 42843 (S.D. Ohio May 19, 2009). Therefore, a separate civil action must be available before invocation of Section 2307.60.

Here, Plaintiff Sollenberger has only alleged a violation of R.C. 2913.04—a statute that could give rise to criminal liability—without identifying a corresponding civil cause of action. As a matter of law, this is insufficient to state a claim under Section 2307.60; therefore, the Court DISMISSES Plaintiff Sollenberger's civil claim pursuant to R.C. 2307.60 against all defendants, without prejudice.

### c. Tortious Interference with an Employment Relationship (Third Claim)

Here, Plaintiff Sollenberger labels his third cause of action as "[t]ortious [i]interference[.]" (Doc. 2-1.) "[T]ortious interference with a business relationship requires proof of the following four elements: '(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom.'" *Peters v. Monroe Twp. Bd. of Trs.*, No. 2:11-CV-00083, 2011 U.S. Dist. LEXIS 92300, at *13–14 (S.D. Ohio Aug. 18, 2011) (quoting *DiPasquale v. Costas*, 926 N.E.2d 682, 704 (Ohio Ct. App. 2010)). Ohio recognizes a second cause of action for

interference with an employment relationship, which Plaintiff Sollenberger asserts. *Peters*, 2011 U.S. Dist. LEXIS 92300, at *14 (citing *Dryden v. Cincinnati Bell Tel. Co.*, 734 N.E.2d 409, 414 (Ohio Ct. App. 1999)).

Tortious interference with an employment relationship occurs "when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *Hadi v. State Farm Ins. Cos.*, No. 2:07-CV-0060, 2008 U.S. Dist. LEXIS 91558, at *11 (S.D. Ohio Nov. 12, 2008) (quoting *A&B – Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1294 (Ohio 1995)). In order to sufficiently plead a claim for interference with an employment relationship, Plaintiff Sollenberger must plausibly plead facts that demonstrate: "1) the existence of an employment relationship between plaintiff and the employer; 2) the defendant was aware of this relationship; 3) the defendant intentionally interfered with this relationship; and 4) the plaintiff was injured as a proximate result of the defendant's acts." *Hadi*, 2008 U.S. Dist. LEXIS 91558, at *11 (quoting *Lennon v. Cuyahoga Cnty. Juvenile Court*, No. 86651, 2006 Ohio App. LEXIS 2443, at *14–15 (Ohio Ct. App. May 25, 2006)).

"[T]o succeed on a claim for interference with an employment relationship, a plaintiff must establish 'either wanton or malicious behavior.'" *Peters*, 2011 U.S. Dist. LEXIS 92300, at *14 (quoting *Dryden v. Cincinnati Bell Tel. Co.*, 734 N.E.2d 409, 414 (Ohio Ct. App. 1999)). Malice is defined as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Peters*, 2011 U.S. Dist. LEXIS 92300, at *14–15 (citing *Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987)). "Wanton

41

misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Anderson*, 983 N.E.2d at 267. Wanton misconduct is a "very high standard" that is not met by mere negligence. *Messer*, 1997 U.S. Dist. LEXIS 23753, at *43.

Additionally, the right of noninterference is limited because there are those whose position entitles them to intrude upon the employment relationship, such as the employee-employer relationship. *Peters*, 2011 U.S. Dist. LEXIS 92300, at *15 (stating such an action for interference only extends to "outsiders") (citing *Contadino v. Tilow*, 589 N.E.2d 48, 50 (Ohio Ct. App. 1990). Ohio Courts have held that persons in supervisory roles as well as those who are acting within the scope of their employment duties do not fall within the "outsiders" subject to liability for interference. *Peters*, 2011 U.S. Dist. LEXIS 92300, at *15–16 (citing *Smiddy v. Kinko's, Inc.*, No. C–020222, 2003 WL 203576, at *3 (Ohio Ct. App. Jan. 31, 2003); *Anderson*, 983 N.E.2d at 267)). In Plaintiff Sollenberger's Complaint, he states that Defendant Plummer and Sheriff Defendants were operating within the scope of their employment. (Doc. 2-1, at PageID# 88.) Therefore, their actions fall outside Plaintiff Sollenberger's right of noninterference.

Moreover, Defendant Estridge plead qualified privilege as an affirmative defense. (Doc. 8, at 6.) "The Ohio Supreme Court has held that a privilege exists to publications when it is "fairly made by a person in the discharge of some public or private duty, whether legal or moral . . . ." *Hahn v. Kotten*, 331 N.E.2d 713, 718 (Ohio 1975).

> Thus, "where circumstances exist, or are reasonably believed by the defendant to exist, which casts on him the duty of making a communication to assert another person to whom he makes such communication in the performance of such duty, or whether the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do, . . ." the communication is qualifiedly privileged.

*Brothers v. Cnty. Of Summit*, No. 5:03-CV-1002, 2007 U.S. U.S. Dist. LEXIS 38468, at *89 (N.D. Ohio May 25, 2007) (quoting *Hahn*, 331 N.E.2d at 245–56). The elements one must meet for qualified communication "are good faith, an interest to be upheld, a statement limited in scope to this purpose, a proper occasion and publication in a proper manner and the proper parties only." *Hahn*, 331 N.E.2d at 718. To overcome the qualified privilege, the defendant must show actual malice. *Varanese v. Gall*, 518 N.E.2d 1177, 1179 (Ohio 1988).

Plaintiff Sollenberger alleges that he is undergoing a divorce with Defendant Sollenberger, who took one of his old phones without his knowledge or consent, then, alongside Defendant Estridge, extracted information that Defendant Sollenberger ultimately sent to the NAACP. (Doc 2-1, at PageID# 89.) Additionally, Defendant Estridge transferred files from her computer to an iPhone 4 provided to her by an employee of the Sheriff's Office, and then, Defendant Sollenberger provided the cell phone left at her residence to the Sheriff's Office for imaging. (*Id.*, at PageID# 90.) Finally, Plaintiff Sollenberger alleges his termination was because of the investigation initiated by the Sheriff's Office. (*Id.*)

In Count III, the Complaint states, Defendants Sollenberger and Estridge "acted with the intent to interfere with [Plaintiff Sollenberger's] employment[,]" and that Defendant Sollenberger's "motivation was to gain an advantage in the divorce proceeding and [Defendant Estridge] was assisting [Defendant Sollenberger] in this unlawful endeavor." (Doc. 2-1, at PageID# 92.) Excluding these conclusory statements regarding Defendants Sollenberger and Estridge's purported state of mind, the underlying acts Plaintiff Sollenberger alleges, i.e., extracting information from one of Plaintiff Sollenberger's old cell phones and sending it to the NAACP, and then, providing that information to the Montgomery County Sheriff's Office at a later date, do in and of themselves create a possible inference of malicious or wanton behavior.

43

However, Defendants Sollenberger and Estridge's actions were in good faith, for the benefit of the public, in light of the content of the text messages and Plaintiff Sollenberger's role as a Detective with the Sheriff's Office. *See Connick v. Myers*, 461 U.S. 138, 146 (1983) (holding police misconduct is a matter of concern to the community); *Kuhn v. Washtenaw Cnty.*, No. 10-11191, 2012 U.S. Dist. LEXIS 51443, at *32 (E.D. Mich. Apr. 12, 2012), *aff'd*, 709 F.3d 612 (6th Cir. 2013) (holding a defendant was not a third party to an employment relationship because he was acting for the benefit of the Sheriff's Office on an issue of public concern); *Ernst v. Anderson*, No. 02 C 4884, 2005 U.S. Dist. LEXIS 7469, at *14 (N.D. Ill. Mar. 3, 2005) (encouraging reporting of police misconduct because the public has an interest in police officers acting in a proper and lawful manner).

Rather than malicious or wanton behavior, the reporting of the text messages to the NAACP and later cooperation with the Sheriff's Office were the result of efforts to convey information of police misconduct for the betterment of the community, which is a matter of public concern. *Cf. Williams v. Commonwealth of Kentucky*, 24 F.3d 1526, 1535–36 (6th Cir. 1994) (characterizing reporting of alleged political corruption as a matter of public concern, and discussions of office policy a matter of private concern). The question ultimately becomes whether one should be subject to liability merely for reporting police misconduct. Furthermore, if reporting wrongdoing were sufficient to state malicious or wanton behavior, a third party who merely witnesses employee theft and reports it to a manager would be subject to liability if the employee were later discharged because of the theft. Without further factual allegations specifically supporting malicious or wanton behavior, as opposed to simply reporting police misconduct, Plaintiff Sollenberger has failed to state a plausible claim for tortious interference

with an employment relationship, as well as failed to meet the requirements to overcome a qualified privilege for the reporting of matters of public concern.

Accordingly, the Court DISMISSES Plaintiff Sollenberger's tortious interference with an employment relationship claim against Defendants Sollenberger and Estridge, without prejudice.

### d. Civil Conspiracy (Sixth Claim)

In Ohio, to state a claim for civil conspiracy, there must be "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Milner v. Biggs*, 522 F. App'x. 287, 295 (6th Cir. 2013) (quoting *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998)). "Moreover, '[a]n underlying act is required before a civil conspiracy can succeed.'" *Chester v. Neyer*, 477 F.3d 784, 805 (6th Cir. 2007) (quoting *Williams*, 700 N.E.2d at 868). Here, Plaintiff Sollenberger alleges invasion of privacy is the basis of his civil conspiracy claim. (Doc 2-1, at PageID# 94.) Insofar as the Court has dismissed this claim against all Defendants, there is no basis to support a claim of civil conspiracy.

Accordingly, the Court DISMISSES Plaintiff Sollenberger's civil conspiracy claim against all Defendants, without prejudice.


### D. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant Plummer and Sheriff Defendants' Motion to Dismiss (Doc. 13), the Court GRANTS Defendant Sollenberger's Motion to Dismiss (Doc. 2-1, at PageID# 126-27), and the Court GRANTS Defendant Estridge's Motion to Dismiss (Doc. 17). The captioned case is hereby TERMINATED upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

March 25, 2016                              *s/Thomas M. Rose

                                 _____

                                 Thomas M. Rose, Judge
                                 United States District Court